AMERICAN BANK & TRUST CO., APPELLANT, *v.* FARM-
ERS' ELEVATOR & MILLING CO. OF GERALDINE
ET AL., RESPONDENTS.

(No. 4,793.)

(Submitted May 27, 1922. Decided June 26, 1922.)

[208 Pac. 594.]

*Corporations—Principal and Agent—Unauthorized Act of
Agent—Ratification.*

Principal and Agent—Ratification of Unauthorized Act of Agent—
What Constitutes.
1. Ratification, being a purely voluntary act on the part of the
principal, ordinarily requires some positive act, and no duty rests
upon him to adopt or to make inquiries concerning it.

Same — When Delay in Repudiating Unauthorized Act of Agent
Amounts to Ratification.
2. Before acquiescence alone may be said to amount to ratifica-
tion of the unauthorized act of an agent, it must have been so
long continued that it can be accounted for only on the theory
that there has been affirmative action by the principal.

Same—Corporations—Failure to Disavow Act of Agent—When not
Ratification.
3. Under the above rules, *held*, that failure of the board of di-
rectors of a corporation to disavow acceptance of an order for
the payment of money made by its agent, at a meeting held a
little over a month after acceptance did not amount to a ratifica-
tion of his unauthorized act.

*Appeals from District Court, Cascade County; J. B. Leslie,
Judge.*

ACTION by the American Bank & Trust Company of Great
Falls against the Farmers' Elevator & Milling Company of
Geraldine and others. Judgment for the defendants, and
plaintiff appeals from it and from an order denying a new
trial. Affirmed.

*Messrs. McKenzie & McKenzie,* for Appellant, submitted a
brief; *Mr. John McKenzie* argued the cause orally.

"Ratification may be shown by express appointment ·or im-
plied from the adoption or recognition of his acts by the cor-
poration." (*Calvert* v. *Idaho Stage Co.,* 25 Or. 412, 36 Pac.

24; Mechem on Agency, par. 97; *Martin* v. *Webb,* 110 U. S. 7, 28 L. Ed. 49, 3 Sup. Ct. Rep. 428 [see, also, Rose's U. S. Notes]; *Finnigan* v. *Pacific Vinegar Co.,* 26 Or. 152 37 Pac. 457.) "And such ratification need not be by a formal vote or resolution of the board of directors." (*Campbell* v. *Pope,* 96 Mo. 468, 10 S. W. 187.) The president and secretary of a corporation can ratify. (21 Am. & Eng. Ency. of Law, 2d ed., p. 852; *Depot Realty Syndicate* v. *Enterprise Brew. Co.,* 87 Or. 560, L. R. A. 1918C, 1001, 170 Pac. 294.)

The silence of the alleged principal when fully informed of the unauthorized act is evidence of a ratification. (1 Am. & Eng. Ency. of Law, 2d ed., p. 1209; *Kelsey* v. *Crawford County Nat. Bank,* 69 Pa. St. 426; 2 Greenleaf on Evidence, sec. 67.) It was held in *Indianapolis Rolling Mill* v. *St. Louis etc. R. Co.,* 120 U. S. 256, 30 L. Ed. 639, 7 Sup. Ct. Rep. 542 [see, also, Rose's U. S. Notes], that when a board of directors, with knowledge of their agent's acts, did not disaffirm said action within six months, they ratified the same.

In *Walworth County Bank* v. *Farmers' L. & T. Co.,* 16 Wis. 629, it appears that a sale of property belonging to a railroad company was made by its president in part payment of a debt due from the company, which sale was in fact unauthorized. It was held that if the fact of the sale had been communicated to its board of directors and was openly talked of at one of their meetings, but they did nothing to disaffirm it, this would be deemed a ratification of the sale. (See, also, *Union G. M. Co.* v. *Rocky Mountain Nat. Bank,* 2 Colo. 262; *Ilfeld* v. *Ziegler,* 40 Colo. 401, 91 Pac. 826.) Silence of the principal is conclusive evidence of ratification when the rights of innocent third persons have been prejudiced thereby, or, in other words, when the case contains the elements of equitable estoppel. (31 Cyc. 1278.) This result will obtain when the third person omitted to take steps against the agent. (2 Corpus Juris, 511; *St. Louis Gunning Adv. Co.* v. *Wanamaker,* 115 Mo. App. 270, 90 S. W. 737; *Lynch* v. *Smyth,* 25 Colo. 103, 54 Pac. 634.)

No appearance in behalf of Respondents.

MR. JUSTICE COOPER delivered the opinion of the court.

This action was brought to recover from the defendant the Farmers' Elevator & Milling Company damages for its failure to deliver to the Globe Construction Company a certificate of deposit on the Montana State Bank of Geraldine in the sum of $3,000. One J. B. Hogg was a member of what was known as the "building committee" of the elevator company. The contract between the two companies provided for payments on stated occasions, as the work progressed. Among other things, it was provided therein that, when the construction should reach the point "when the cribbing for the elevator was up" to where the roof was to begin, the construction company, in the place of cash, should accept interest-bearing certificates of deposit of the Montana State Bank of Geraldine in payment of the second installment of $3,000. On October 10 the cribbing was completed to the point mentioned in accordance with the terms of the contract. On October 6, 1917, Mr. Napper and Mr. Hosch, president and secretary of the construction company, respectively, applied to the plaintiff bank for a loan of $3,000. For the purpose of assisting the construction company to procure the loan, J. B. Hogg, who, besides being a "member of the building committee" of the elevator company, was also cashier of the Montana State Bank of Geraldine, represented to the plaintiff bank that he was authorized to speak for the elevator company and stated to Mr. Reckard, the president of the bank, that the construction company had theretofore agreed with the elevator company that it would accept interest-bearing certificates of deposit on the Montana State Bank of Geraldine, instead of cash; that the construction company agreed that it would assign and deliver to plaintiff, as security for the loan, the certificates of deposit that were to be delivered to it as a second payment on the building contract. Upon assurance of Mr. Hogg that the certificates of deposit would be delivered

to the bank by mail upon the following order and acceptance, the loan was made: "When the next payment of $3,000 is due on our contract (which will be when the cribbing for the elevator is up), please issue the certificate of deposit payable to the American Bank & Trust Company of Great Falls, Montana, and charge same to our account. Globe Construction Company." Indorsed thereon was the following: "Accepted Oct. 6, 1917.   J. B. Hogg, Member of Building Committee."

On December 12, 1917, a petition was filed by certain creditors of the construction company alleging that it was insolvent. On March 8, 1918, it was adjudged a bankrupt. In an agreement entered into on September 1, 1917, between the elevator and the construction companies there was this provision: "The contractor shall furnish a good and sufficient bond to the amount of fifty per cent of the contract price. Said bond to be in force until all lien rights on the buildings or equipment have expired and the building has been found to be of good workmanship and free from defects. Said bond to be furnished before the second payment has been made on the building to protect the owners from any loss." This bond was not given, nor was its exaction ever waived by the elevator company.

Upon the issues thus made, the case was tried by the court without a jury, its findings being that the plaintiff agreed to accept as security for the loan the certificates of deposit upon the representations made by Mr. Hogg, but for which the loan would not have been made; that the construction company used the proceeds of the loan upon different of its jobs, including the building of the elevator and mill, but what amount the testimony does not disclose; that demand for the certificate was made and delivery refused; that the cribbing was completed on October 10, 1917; that Hogg in the transaction was acting without any authority from the elevator company, and that October 6, 1917, the date of the acceptance by him of the order, Hogg told the president and secretary-treasurer of the elevator company of its signing and ac-

ceptance; that on November 12, 1917, the acceptance by Hogg of the order was discussed by the board of directors of the elevator company, by the president of the plaintiff and its attorney, John McKenzie, Sr., who then and there demanded payment of plaintiff's claim, and the board "neither paid the said claim nor disavowed the acceptance" of Hogg. As conclusions of law, the court found that the plaintiff is entitled to have the order reformed as prayed for in the complaint because omitted therefrom by mutual mistake; that the assumption of Hogg to act for the elevator company was in excess of his authority and his acceptance of the order not binding upon it; that the notice imparted to the president and the secretary of the elevator company was notice to it; that the elevator company has committed no act or been guilty of any inaction which can be construed as a ratification of the act of Hogg in assuming to accept the order; that the plaintiff is not entitled to recover; but that the defendant the elevator company is entitled to a dismissal of the action. From the judgment upon the findings and an order denying a new trial the plaintiff has appealed.

Counsel in their brief admit that plaintiff failed to prove **[1–3]** that Hogg had authority to make the acceptance for the elevator company, but rely upon the ratification of Hogg's acceptance by the board of directors at its meeting on November 12. Their argument is that the elevator company's failure to pass a resolution disavowing acceptance at the meeting amounted to ratification by silence. They argue that, when the president and secretary, or one of them, at a board meeting stated in the presence of the other members of the board that they raised no question on the acceptance, stating "that it was all right and not to sue Hogg," it amounted to an express ratification of Hogg's action in accepting the order to deliver the certificate of deposit, and that it was not necessary for the plaintiff to make out a case from which the elevator company would be estopped to deny the acceptance.

Ratification, being purely a voluntary act upon the part of the principal, ordinarily requires some positive act. No duty rests upon him to adopt it or to make inquiries concerning it. (*Pew* v. *McLeish,* 62 Mont. 437, 205 Pac. 235.) In order that acquiescence alone should become ratification, the delay must be so long continued that it can be accounted for only on the theory that there has been some affirmative act. (*Evans* v. *Smallcombe,* L. R. 3 H. L. 249; *Town of Derby* v. *Alling,* 40 Conn. 410.) The evidence does not preponderate against the findings.

Judgment and order affirmed.

*Affirmed.*

ASSOCIATE JUSTICES FARR, HOLLOWAY and GALEN and HONORABLE ROY E. AYERS, District Judge, sitting in place of MR. CHIEF JUSTICE BRANTLY, disqualified, concur.

Rehearing denied September 11, 1922.